UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.:  5:09CV272 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITY OF AKRON, et al. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

On March 13, 2013, the Court overruled the parties' objections and appointed, as its own expert, Professor Craig Johnston.  The Court then convened a telephone conference on April 17, 2013 to discuss further the Court's expectations and the parameters of Professor Johnston's duties.  When the parties learned of Professor Johnston's proposed hourly rate of $450 per hour, all three parties indicated that they believed this rate to be too high.  Accordingly, the Court allowed the parties to file a brief in opposition to that hourly rate.  The Court now reviews that opposition and finds no merit in its contentions.

        The Court has found little precedent directly on point for setting the rate to pay a Court expert appointed under Rule 706.  However, Fed.R.Civ.P. 26(b)(4)(E) provides that a party must pay an expert a reasonable fee for depositions.  The Court finds such a payment to be analogous to payment under Rule 706 and is therefore guided by the standards for determining the reasonableness of such a payment.  It is in

1

> the Court's discretion to determine the reasonableness of an expert's fee. *Bonar v. Romano*, 2010 WL 4280691, at *1 (S.D.Ohio Oct. 25, 2010); *Massasoit v. Carter*, 227 F.R.D. 264, 265 (M.D.N.C.2005). In assessing the reasonableness of an expert's fee, the Court should consider the expert's education, training and experience; the prevailing rate for comparable experts; and the nature and complexity of the information sought. *See Bonar*, at *1 (citing *Massasoit*, 227 F.R.D. at 265). In general, "[a]n expert's regular hourly rate for professional services is presumptively a reasonable hourly rate for deposition." *Id*. When determining a reasonable hourly rate, courts use as a guideline the prevailing market rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record. A district court may rely on a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests.

*Van Horn v. Nationwide Property and Casualty Ins. Co.*, 436 Fed. Appx. 496, 498-99 (6th Cir. 2011) (citations and quotations omitted).

The parties have argued at length that the proposed hourly rate is excessive under "controlling law." However, in doing so, the parties have repeatedly relied upon law that focuses upon the approved hourly rate for a *special master*. Professor Johnston, however, is not a special master. He is a Court-appointed expert. In the case primarily relied upon by the parties, *Reed v. Cleveland Bd. of Educ.*, 607 F.2d 737 (6th Cir. 1979), the Court noted as follows:

> In appointing Dr. Foster and Professor Mearns as experts in this case the district court cited Rule 706, Federal Rules of Evidence. However, Rule 706 refers only to the appointment of expert witnesses. Though Dr. Foster testified for the plaintiffs in the earlier liability trial of *Reed v. Rhodes*, he did not function as an expert witness after his appointment by the court. Dr. Foster and Professor Mearns were not called as expert witnesses by the court and they were not examined under oath by the parties. *See United States v. Cline*, 388 F.2d 294, 296 (4th Cir. 1968); *Danville Tobacco Ass'n v. Bryant-Buckner Associates, Inc.*, 333 F.2d 202, 208 (4th Cir. 1964). We believe their appointment was as expert advisors or consultants to the special master and the court, and the authority for such appointment derives, not from Rule 706, but either from Rule 53, F.R.Civ.P., *Hart v. Community School Board, supra*, 383 F.Supp. at 764,

>or from the "inherent" power of the court, *Ex parte Peterson, supra*, 253 U.S. at 312, 40 S.Ct. 543.

*Id.* at 746. Unlike *Reed*, this Court fully intends for Professor Johnston to function as an expert witness. He will ultimately offer sworn testimony and the parties will have the right to question him under oath. As such, the Court finds *Reed* and its reliance on the so-called *Hart* test to be inapplicable.

Instead, the Court has closely reviewed Professor Johnston's education, training and experience, and the prevailing market rate within this market. The Court would note that there can be no real dispute that Professor Johnston was at the top end of the market in Portland, Oregon while he was in practice at Perkins Coie. Professor Johnston has indicated that his hourly rate would be very close to $600 per hour if he had remained in private practice. Moreover, his hourly rate for work done for governmental entities would be slightly above the $450 per hour he seeks in this matter.

The Court has also reviewed the Economics of Law Practice in Ohio – a compensation survey performed by the Ohio State Bar Association in 2010. That survey indicates that the highest hourly rates charged by partners at large firms in Ohio approaches $600 per hour. Without regard to firm size, the highest hourly rates on average in Cleveland are roughly $450 per hour. The upper end of rates for attorneys that claim environmental law as a practice is roughly $425 per hour. Accordingly, Professor Johnston's proposed rate falls right in the heartland of the rates charged by others with similar experience that reside *in this market*.

Moreover, the Court would note that it has taken into consideration that all three entities involved herein are governmental entities. At the same time, the Court has noted that the parties have agreed to even split the cost of Professor Johnston's fees, resulting in

3

each paying only $150 per hour for his services. Additionally, Professor Johnston has agreed to utilize law students whenever possible, dramatically reducing the overall costs of his appointment.

Based upon the above, the parties' objections to Professor Johnston's hourly rate are hereby overruled. Professor Johnston shall be permitted to submit his invoices at his full hourly rate.

Finally, Professor Johnston is hereby advised as follows. From time to time, on approximately a monthly basis, the Court's expert shall file with the Court an Itemized Statement of fees and expenses. The Court shall review this Statement for regularity and then direct the parties to promptly make payment to the expert. The Court will allow seven (7) days for the parties to lodge any objections to the statement of fees and costs.

The Court will also ask that Professor Johnston file, roughly every 45 days from the date of the Court's next telephone conference, a status report. The Court expects nothing more than a one to two page report that discusses what progress the expert has made and any impediments that have been encountered during that period of time.

In order to facilitate the filing and review of these statements and to provide Professor Johnston with full access to the docket, the Clerk of Court is hereby directed to add Professor Johnston to the docket in this matter. The Clerk of Court shall utilize whatever method is necessary to ensure that Professor Johnston has the ability to file his fee statements, any interim status reports, and his final report. Professor Johnston should also be given full access to all materials filed on the docket.

If necessary, the Clerk of Court shall utilize the follow information for Professor Johnston: Craig Johnston, 10015 S.W. Terwilliger Blvd., Portland, OR 97219, (503) 768-6713, craigj@lcark.edu.

IT IS SO ORDERED

June 3, 2013 /s/ John R. Adams
JUDGE JOHN R. ADAMS
UNITED STATES DISTRICT COURT