**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:09CV272 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITY OF AKRON, et al., | ) | |
| | ) | (Resolving Doc. 160) |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter appears before the Court on a motion for relief pursuant to Fed.R. Civ.P. 60(B) filed by Defendant City of Akron. The Court has been advised, having reviewed the motion, pleadings, and applicable law. For the reasons that follow, the motion is DENIED.

Under Rule 60(b), a motion to vacate may be granted only for certain specified reasons: 1) mistake, inadvertence, surprise, or excusable neglect; 2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); 3) fraud, misrepresentation, or other misconduct of an adverse party; 4) the judgment is void; 5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or 6) any other reason justifying relief from the operation of the judgment. *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir. 1998)(quoting Fed.R. Civ.P. 60(B)).

1

The Supreme Court has offered further guidance when evaluating a motion to vacate or modify filed in the context of a consent decree.

> Although we hold that a district court should exercise flexibility in considering requests for modification of an institutional reform consent decree, it does not follow that a modification will be warranted in all circumstances. Rule 60(b)(5) provides that a party may obtain relief from a court order when "it is no longer equitable that the judgment should have prospective application," not when it is no longer convenient to live with the terms of a consent decree. Accordingly, a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance.

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992).  The moving party may meet its burden "by showing a [] significant change either in factual conditions or in law." *Id.* at 384. For example, "[m]odification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous." *Id.*  A district court is also justified in granting a motion to vacate when it is shown to be "unworkable" due to "unforeseen obstacles" or when continued application of the decree without a modification would be "detrimental to the public interest."  *Id.*

"Ordinarily, however, modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id.* at 385 (citing *Twelve John Does v. District of Columbia*, 861 F.2d 295, 298–299 (C.A.D.C. 1988); *Ruiz v. Lynaugh*, 811 F.2d 856, 862–863 (5th Cir. 1987)).  "If it is clear that a party anticipated changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable

2

effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b)." *Rufo*, 502 U.S. at 385.

In the instant matter, Akron seeks to modify the consent decree under both 60(B)(2) and 60(B)(5). Akron also seeks a hearing on its motion. However, under either analysis, it fails to justify its position that a hearing is necessary and that a modification is warranted.

Initially, with respect to whether a hearing is necessary, the Court finds persuasive the following: "Evidentiary hearings are not necessary where the parties' briefs clearly set forth the relevant facts and arguments of a case such that a hearing would not add anything to the briefs, and where the court has sufficient evidence before it to make detailed factual findings." *Gonzalez v. Galvin*, 151 F.3d 526, 535 (6th Cir. 1998) (analyzing the issue in the context of terminating a consent decree). In the instant matter, all three parties have submitted voluminous briefs. In addition, Akron has submitted an appendix with dozens of attachments including declarations and exhibits. Coupled with the already extensive record created during the approval of the consent decree, the Court has all of the relevant facts and arguments before it to issue a decision and a hearing would not add anything to the briefing. Accordingly, the Court declines to hold a hearing on the motion to modify the decree.

Akron contends as follows with respect to modification of the decree:

Modification is warranted because of changed circumstances and/or newly discovered evidence, including: (a) subsequent to Akron's signing of the Decree in 2009 and submission of the Decree to the Court in May 2010, and prior and subsequent to the Court's delayed entry of the Decree one year ago on January 17, 2014, USEPA has treated Akron inconsistently with other cities in this country such as Indianapolis, forcing Akron to accept some of the highest control requirements in the country while depriving Akron of the flexibility of the Integrated Planning Framework

3

> unveiled by USEPA in June of 2012; (b) new flowmeter evidence from an April – July 2014 sewershed model update revealing that water flows in the Ohio Canal Interceptor Tunnel watershed were much different than indicated in the Decree; (c) new treatment performance evidence from a post-Decree watershed study revealing that system performance assumed in the Decree was inaccurate; (d) change in affordability and unreasonable costs, with the estimated cost of the project upon agreement to the Decree of $870 million, with subsequent cost estimate increases to $1.14 billion ($1.4 billion with cost escalation to the midpoint of construction); (e) the decline in Akron population and local economic challenges have resulted in increased burdens on remaining Akron ratepayers in challenging economic times; and (f) despite continued compliance with the Decree by Akron and good faith efforts by Akron to develop reasonable and appropriate Integrated Planning with USEPA based on such changed circumstances and newly discovered evidence, USEPA has refused to use the Integrated Planning Framework to allow reasonable and appropriate modification measures consistent with the June 5, 2012 USEPA Memorandum entitled *Integrated Municipal Stormwater and Wastewater Planning Approach Framework*.

Doc. 160 at 1-2.

> Akron respectfully requests that the Decree be modified by the addition of the following additional Paragraph 112-a in the Modifications section of the Decree:
> 112-a. Notwithstanding any other provision in this Consent Decree, the City may request a modification of the control measures (including the location, description, design criteria, performance criteria, or critical milestones) specified in the Long Term Control Plan Update based on development of an Integrated Plan, consistent with the June 5, 2012 U.S. EPA Memorandum Integrated Municipal Stormwater and Wastewater Planning Approach Framework, or any later-adopted guidance concerning integrated planning. Such a modification request may be based on factors including but not limited to: a) modifications that may provide equal or better environmental results than those required by the performance criteria of the existing control measures; or b) a demonstration that the existing control measures are no longer affordable. U.S. EPA will evaluate such a modification request in accordance with applicable law and guidance concerning integrated planning and affordability.

Doc. 160 at 5.

Within its motion, Akron highlights that the Decree provides that "the Party seeking modification bears the burden of demonstrating that it is entitled to the requested

4

modification in accordance with Federal Rule of Civil Procedure 60(b)." However, in so highlighting that provision, Akron does not quote the initial portion of that provision which provides: "Any disputes concerning modification of this Decree shall be resolved pursuant to Section XIV of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 73[.]"

Within its motion, Akron goes on at length to discuss the alleged changed circumstances that warrant modification of the decree. Akron contends that new flowmeter evidence from 2014 is dramatically different than readings taken before the Decree was negotiated and that cost estimates to complete the Decree projects have greatly increased. Finally, Akron contends that continuing under the Decree without modification would be detrimental to the public interest as it deprives Akron of the opportunity to seek modifications based on the development of an Integrated Plan.

The Court would note that while Akron seeks to add a provision that would allow it to use Integrated Planning, at its core Akron seeks a mechanism for modifying the obligations contained in the Long Term Control Plan Update. Accordingly, when evaluating this request, the Court is mindful of the fact that the LTCP Update was freely negotiated between the parties and agreed to by Akron in the Fall of 2011,[1] with the assistance of the mediation office of the Sixth Circuit, while this Court lacked jurisdiction to take any action in this matter.

In response to the pending motion, both the United States and the State of Ohio contend that none of Akron's reasons are sufficient to warrant modification. First, the governmental entities assert that the City updating flowmeter readings was anticipated by all of the parties and that the new readings simply do not justify modification. Similarly,

---

[1] Akron submitted the Update to the EPA and obtained EPA's approval on November 17, 2011.

the governmental entities assert that any change in the financial estimates for projects does not warrant modification.  Finally, the EPA denies any unfair treatment in the way it has dealt with requests made by Akron.

Upon reviewing Akron's underlying reasons, one would expect that Akron is proposing substantial modifications to the Decree.  Given the alleged revised flowmeter data and the alleged substantial increase in costs, a casual observer would expect that Akron is seeking to extend its deadlines for project completion and perhaps even seeking to eliminate projects in their entirety.  However, Akron has not sought to alter any of its substantive obligations.  Instead, Akron seeks to add a paragraph that would fundamentally alter the manner in which the Decree handles dispute resolution.

In its current form, the Decree contains Section XIV, Dispute Resolution, which consists of 8 full paragraphs that are to set forth "the exclusive mechanism" for resolving disputes under the Decree.  Doc. 155 at 42.  These mechanisms provide that any disputes shall first be subject to informal negotiations. Paragraph 71 of the Decree, Doc. 155 at 43.  Should informal negotiations fail to be successful, the dispute would move forward to formal dispute resolution.  Paragraph 72 of the Decree, Doc. 155 at 43.  There is no dispute that these provisions were negotiated in order to ensure that the Court only became involved in disputes as a last recourse.

One could interpret Akron's proposal in several manners.  First, it could be read to allow Akron to avoid the dispute resolution process and involve the Court immediately should it seek to utilize Integrated Planning.  In the alternative, the proposed modification could be read to alter the "arbitrary and capricious" standard negotiated by the parties. Specifically, the Decree provides as follows: "[I]n any dispute brought under Paragraph

6

72… Akron shall have the burden of demonstrating, based on the administrative record, that the position of the United States and State is arbitrary and capricious or otherwise not in accordance with law under applicable provisions of administrative law." Doc. 155 at 44. Finally, one could read the plain language of the proposed modification and find that it does nothing other than allow Akron to propose modifications that are consistent with the June 5, 2012 U.S. EPA Memorandum Integrated Municipal Stormwater and Wastewater Planning Approach Framework.

Given that the last interpretation seems the only plausible interpretation, the Court can find no justification for modifying the Decree. Nothing in the Decree prevents Akron from seeking to modify its obligations while relying on the Integrated Planning framework promulgated by the EPA. In fact, Akron has sought to do just that and admits as much in its briefing. However, rather than follow the dispute resolution provisions agreed to by the parties, Akron has sought to modify the Decree. In so doing, Akron seeks to have the Court reach the merits of a dispute that it has not fully presented to the United States or the State of Ohio.

In summary, the LTCP Update negotiated by the parties explicitly permits Akron to propose "green" alternatives to its existing obligations. Akron has in fact submitted precisely those types of alternatives to the EPA. In turn, the EPA has found that Akron's alternatives do not meet its requirements for approval. Unhappy with the answer received from the EPA, Akron filed this motion seeking to avoid the freely-negotiated and mutually-agreed-to dispute resolution process in the Decree. As detailed above, the Court has found no reason to modify the Decree to allow Akron to bypass the resolution process it previously negotiated.

**CONCLUSION**

Akron's motion for relief from judgment is DENIED.

IT IS SO ORDERED.


<u>March 18, 2015</u>                               <u>     /s/ *Judge John R. Adams*        </u>
                                                JUDGE JOHN R. ADAMS
                                                UNITED STATES DISTRICT COURT