# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | CASE NO.: 5:09CV272 |
|---|---|---|
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| v. | ) | **ORDER** |
| CITY OF AKRON, et al. | ) | |
| Defendants. | ) | |

Pending before the Court is the parties' joint motion to approve the Second Amendment to the Consent Decree. Doc. 190. The motion is GRANTED as detailed below.

The Court has previously explained what steps it must take in analyzing the Consent Decree and amendments thereto: "The criteria to be applied when a district court decides whether to approve and enter a proposed consent decree, are whether the decree is fair, adequate, and reasonable, as well as consistent with the public interest." *United States v. Lexington-Fayette Urban County Government*, 591 F.3d 484, 489 (6th Cir. 2010) (citations and quotations omitted). In that respect, the Court should consider "the decree's likely effectiveness as a vehicle for cleansing" the waters at issue. *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1408, 1437 (6th Cir. 1991). "[I]n evaluating the efforts of an agency charged with making technical judgments and weighing complex data, [this Court] must give a proper degree of deference to the agency's expertise, yet also ensure that the agency has considered all of the relevant

1

evidence in the record and has acted in the public interest." *Id.* at 1426 (discussing standard of review under CERCLA) (citation omitted). Furthermore, this Court must be mindful that there exists a "presumption in favor of voluntary settlement" and that the "presumption is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA[,] which enjoys substantial expertise in the environmental field." *Id.* at 1436 (citation omitted). "The court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974).

The Second Amendment contains two components. In the first component, the City of Akron would "use an alternative biologically enhanced high rate treatment system called BioCEPT (chemically enhanced high rate treatment) in place of BioActiflo to treat remaining secondary bypasses at the WPCS." Doc. 190-1 at 11-12. The briefing, exhibits, and hearing testimony have revealed that the switch to BioCEPT is fair, adequate, reasonable, and in the public interest. The use of BioCEPT will not in any manner lessen the ability of Akron to treat effluent. Instead, while utilizing a larger physical footprint, BioCEPT will allow for a slower settling rate through the use of a larger capacity settling tank. While the BioCEPT will meet the same treatment standards, it will also offer the additional benefit of added storage at the wastewater treatment plant. This added storage could be utilized in any number of scenarios, including allowing Akron to perform basic maintenance on other portions of the plant while storing wastewater within the BioCEPT system. Moreover, cost estimates suggest that the

BioCEPT component will cost nearly $50 million less than the existing BioActiflo requirement. As the parties have demonstrated that the BioCEPT technology will successfully meet the standards previously established in the LTCP Update while adding the additional benefits noted above, the Court approves that portion of the Second Amendment.

The second component of the proposed Second Amendment involves so-called green infrastructure. "The proposed Amendment: (1) removes requirements that the City construct three storage basins that would control flows from Racks 3, 26, 28, 27, and 29; (2) adds requirements for the City to instead upsize the underflow drains at Racks 3, 26, 28, 27, and 29; (3) increases the required size of the Rack 10/11 storage basin; (4) increases the size of existing pipes internal to Rack 29 and 30; and (5) requires the City to install GI in the Rack 3, 26, and 28 drainage basins." Doc. 190-1 at 14. In essence, the City of Akron will replace three storage basins with green infrastructure. In order to allow the green infrastructure to handle as much or more storage as the rack basins, the City will also increase the size of underflow drains and existing pipes.

Early on, the Court expressed concerns over whether this type of green infrastructure had been utilized in other similarly-sized projects with the capacities necessary in the City of Akron's system. The parties' presentation eliminated the concerns expressed by the Court. The parties have successfully demonstrated that the various structures proposed will work in tandem with the larger underflow pipes and the larger capacity for treatment at the wastewater treatment plant. The combination of bioretention areas, permeable pavement, enlarged underflow pipes, and a larger capacity for treatment at the plant will allow the City to fulfill its obligation of zero combined

sewer overflows in a typical year. Accordingly, the Court will approve this portion of the Second Amendment as well.

The parties, however, are required to submit to the Court for review the final, approved operation and maintenance plans for the future green infrastructure projects that are not yet due to be completed. If those O&M plans suggest that the projects may not be as successful as those now in existence, the Court reserves the right to have the parties appear before the Court to explain and/or remedy any deficiencies.

The motion to approve the Second Amendment to the Consent Decree is GRANTED.

IT IS SO ORDERED

Date: <u>December 17, 2019</u>         <u>*/s/ John R. Adams*       </u>
                                         JUDGE JOHN R. ADAMS
                                         UNITED STATES DISTRICT COURT