IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) **CASE NO. 5:09-cv-00272** ) ) **JUDGE JOHN R. ADAMS** |
| THE CITY OF AKRON, OHIO, | ) ) |
| and | ) ) |
| THE STATE OF OHIO, | ) ) |
| Defendants. | ) ) |

**PLAINTIFF UNITED STATES OF AMERICA'S RESPONSE TO COURT'S SHOW CAUSE ORDER**

On December 17, 2019, the Court issued an Order requiring the parties to show cause "why the Court should not utilize its retained jurisdiction and inherent power to appoint a monitor to oversee compliance with the Decree [issued in this case]." Dkt. #262 at 6. As explained below, appointing a monitor is unnecessary, inasmuch as it is duplicative of the oversight roles already exercised by the United States and State of Ohio, likely to cause delay and confusion, and costly. Therefore, Plaintiff United States, on behalf of the United States Environmental Protection Agency ("U.S. EPA"), hereby shows cause why the Court should not appoint a monitor.

As an initial matter, the Court's Order does not define the potential scope of the monitor's authority. The United States assumes for the purpose of this Response that the Court intends, in significant part, to use the monitor to gather information and report to the Court on the City's progress in complying with elements of the Consent Decree. If, instead, the Court intends to refer certain of its decision-making authorities to the monitor (in essence a referral to a special master under Federal Rule of Civil Procedure 53), or to direct the monitor to engage in activities that could coincide with or even supplant the authorities and functions of the Governments in this matter, the United States requests the opportunity for a further response.

## INTRODUCTION AND BACKGROUND

Given the Court's extensive history with this case, including the three-day evidentiary hearing in July 2019 on the proposed Second Amendment to the Consent Decree, the United States will provide only a brief summary of the relevant background here. As the Court knows, the parties entered into the Consent Decree to address violations of the Clean Water Act related to the City of Akron's operation of its combined sewer system and wastewater treatment plant. The Court approved the Consent Decree and the associated Long Term Control Plan Update ("LTCP Update") in January 2014. Dkt. #154.

The LTCP Update, which was approved by both the United States and State and is incorporated in the Consent Decree, sets forth a required set of improvements to Akron's sewer system and wastewater treatment plant, as well as deadlines for those projects. All projects must be complete by the end of October 2027, but the LTCP Update also establishes earlier deadlines for individual projects. The required projects range in scale from sewer separations (replacing a combined sewer segment with separate pipes for sewage and stormwater) at individual combined sewer outfalls ("CSOs"), Consent Decree at ¶ 11, to major tunneling projects, LTCP Update at

2

Rows 11 and 12, and improvements that have nearly doubled the wastewater treatment plant's maximum capacity, *See* 7/31/19 Hearing Transcript, Dkt. #243, at pp. 253-260. The City has already completed many of the required projects, including sewer separations, the main outfall interceptor project, several storage basins, and capacity improvements at the wastewater treatment plant. City of Akron Semi-Annual Report No. 19, Dkt. #248 at pp. 1-3, 13, 16-17. In fact, all but a handful of the required projects are already underway. *See generally id.* The only individual requirements that have future deadlines for bidding are Racks 26 & 28 (recently addressed by the Second Amendment to the Consent Decree); the enhanced high rate treatment system required at the remaining outfall at the Ohio Canal Interceptor Tunnel ("OCIT"); and the Northside Interceptor Tunnel. LTCP Update Rows 8 & 9, 11a, and 12.

As explained in greater detail in the United States' Status Report filed on April 29, 2019, the City has implemented the majority of requirements under the Consent Decree and the LTCP Update without delay or other non-compliance. Dkt. #202 at 6. However, as the Court is aware, the City has fallen substantially behind schedule on the OCIT, the first of two required large tunnels. The Consent Decree sets forth a completion date ("Achievement of Full Operation" or "AFO" date) of December 31, 2018 for the OCIT. The OCIT is a 27' diameter tunnel that is over a mile long, and runs under downtown Akron. *See* https://www.akronwaterwaysrenewed.com/the-tunnel.aspx (last visited January 10, 2020). When complete, the tunnel is expected to capture approximately 289 million gallons of untreated combined sewage over the course of a typical year.[1] *See* Dkt. #202. It is, as the Court points out, a "cornerstone" of the LTCP Update. In September and October 2017, the City first notified the

---

[1] This is calculated using hydraulic modeling of "typical year" conditions, and may not reflect discharges during actual rainfall events.

3

United States and State that there had been delays related to procurement and manufacturing of the tunnel boring machine, which would delay overall completion of the project by a period of approximately two weeks. Since then, the period of anticipated delay has increased significantly. *See* Dkt. #202 at p. 2; City of Akron 10/30/19 Status Report, Dkt. #259. The City estimates that it will complete work in June 2020. Dkt. #259. At no point has the United States indicated to the City that the delay will be excused; to the contrary, the United States has repeatedly requested information from the City about the delay and regularly cautioned Akron that the United States is considering all enforcement options. *See* United States' 10/30/19 Status Report, Dkt. #257.

As the Court knows, this has remained a very active case, with regular and extensive communications between the parties. *See, e.g.*, Declaration of Marta Grabowski, Dkt. #251-1. Most recently, the Court entered a Second Amendment to the Consent Decree on December 17, 2019. Dkt. #261.

## **ARGUMENT**

The Court has ordered the parties to show cause why it should not appoint a monitor to "help ensure future compliance with the deadlines and standards in the Consent Decree." Dkt. #262 at p. 7. As discussed below, given the role of the United States and State in overseeing implementation of the Consent Decree, their active and ongoing work in oversight, and Akron's overall good compliance history, coupled with the relatively small number of remaining projects, such an appointment is unnecessary. Further, such an appointment is likely to be duplicative and confusing and to lead to delay, and would be costly. For these reasons, the Court should not appoint a monitor in this case to oversee compliance with the Decree.

A.     **A Court-appointed monitor is not necessary**

    1.     <u>A monitor's role would be duplicative because the United States and State have been overseeing implementation of the Consent Decree and will continue to do so</u>

For over a decade, beginning in 2009 when the Consent Decree was initially lodged with the Court and its earliest requirements went into effect, Dkt. #46, the United States and State have actively overseen implementation of the Consent Decree in this matter. *See, e.g.*, 10/12/12 Hearing Transcript, Dkt. #129 at pp. 229-235. Early in the implementation process, this oversight involved the review and approval of voluminous plans submitted by the City, *id.* at 234-35, Consent Decree at p. 18 (providing a table of submissions); it currently involves monitoring compliance with projects the City is undertaking pursuant to the Consent Decree. 7/30/19 Hearing Transcript, Dkt. #242 at 33. In the limited instances when the City has been unable to meet project deadlines (as a result of a *force majeure* event or for other reasons), the United States has reviewed the City's reports and communicated with the City to ensure its prompt return to compliance. *See e.g.*, Dkt. #223, #227, #228. The United States has similarly devoted significant resources to reviewing proposals by the City to make improvements or other modifications to the Consent Decree, resulting in the two amendments that have now been approved by the Court. *See* 7/30/19 Hr'g. Tr., Dkt. #242 at p. 22, lines 3 – 14.

More particularly, the United States has taken an active role in monitoring Akron's compliance with the construction of the OCIT. The Court's December 17th Order asserts that neither U.S. EPA nor Ohio EPA has "taken *any* action to remedy the City of Akron's non-compliance" with the OCIT deadline, and that both have "wholly abdicated" their roles in overseeing implementation of the Consent Decree. Dkt. #262 at 4, 5. We respectfully submit that this mischaracterizes the record. In addition to overseeing work under the Consent Decree as a whole, the United States has required and reviewed regular reports from the City on the status of

5

the OCIT project. *See* Dkt. #202, Dkt. #257. More recently, it has been working to gather further information to ensure that it has all necessary facts before taking any enforcement action related to the OCIT. *Id.* In early December, the City submitted the more detailed information requested in our second letter, dated October 28, 2019, regarding Akron's delay in meeting the OCIT deadline. The United States is evaluating that information, as well as our enforcement options. As the United States has explained to the Court, *see* Dkt. #202, and repeatedly advised the City, the fact that the United States has not yet exercised its enforcement authority provided under the Consent Decree does not affect the accrual of stipulated penalties under the Decree. Consent Decree ¶ 50. The United States may seek enforcement for the OCIT delay once it has completed its review and analysis of Akron's additional information and, in consultation with the State, determines the most appropriate manner to do so while helping to ensure that the delay is minimized as much as possible.

An outside monitor whose duties are to supervise Akron's compliance with the Decree would duplicate the oversight efforts already undertaken by the Governments. Thus, appointment of a Court-ordered monitor would not only be unnecessary but also potentially confusing, inasmuch as the monitor's oversight duties could overlap with, if not interfere with, the ongoing authority and oversight responsibilities that the United States and the State already have and are exercising to oversee compliance with the Decree.

> 2. <u>To assist the Governments' oversight responsibilities, the Consent Decree provides for regular and extensive reporting on "all information" necessary to determine Akron's compliance with its requirements</u>

In addition to establishing a set of required projects and schedules for completion, the Consent Decree requires Akron to provide extensive periodic reports and prompt notice of any deviations to U.S. EPA and the State. To ensure that U.S. EPA and the State have adequate

information on which to exercise their oversight authority, the Consent Decree requires the City to provide semi-annual reports that "contain[] all information necessary to determine Akron's compliance with the requirements of this Consent Decree." Consent Decree, ¶¶ 75, 76. To assess compliance, the U.S. EPA reviews these reports and tracks the City's progress. Further, the City is required to submit a separate notice when it "violates, or has reason to believe it may violate, any deadline for any requirement" in the Consent Decree. Consent Decree, ¶ 83. Finally, the Consent Decree sets forth standards and notice requirements that the City must follow if it believes that a project has been delayed or cannot be completed for reasons *force majeure*. Consent Decree, Sections XII and XIII.

The reporting and notice requirements under the Decree allow the Governments to track Akron's compliance and determine whether and when additional action needs to be taken to ensure compliance. Thus, a Court-appointed monitor "to help ensure future compliance" with the Decree would be superfluous.

    3.    <u>In general, the City has complied, and continues to comply, with the Consent Decree</u>

Although the OCIT is undeniably important to reducing the environmental impacts of the City's CSO system, and the lengthy delay in completing it is unacceptable, the OCIT's progress is not the only measure of the City's efforts to comply with the broad requirements of the LTCP Update. As the United States indicated in its April 29, 2019 Status Report, the City has implemented the majority of requirements under the Consent Decree and LTCP Update without delay or other non-compliance. Dkt. #202 at p. 6. Among other projects, the City has already completed significant upgrades at its wastewater treatment facility, reinforced the main outfall interceptor ("MOI"), and separated sewers in order to eliminate five CSO outfalls. City of Akron Semi-Annual Report No. 19, Dkt. #248 at pp.1 and 13 (treatment facility upgrades); pp. 16-17

(MOI); pp. 1-3 (separation projects). A majority of the required storage basin projects (or the approved green infrastructure and conveyance projects that will address the affected areas) are complete or underway. *See id.* at p.7-8; 7/31/19 Hr'g. Tr., Dkt. #243, Ex. 2 at p. 26. Although the delay at the OCIT remains a matter of serious concern, it is not indicative of a systemic recalcitrance or refusal by the City to follow through with other required projects. Thus, there is not a compelling need for a Court-appointed monitor to oversee ongoing compliance in this matter.

    4.    <u>The remaining requirements under the Consent Decree are relatively straightforward</u>

As noted above, although the City has until 2028 to complete all projects under the Consent Decree, many of the projects were front-loaded, with deadlines relatively early in the overall schedule. *See generally*, LTCP Update. As a result, only three individual projects remain to be put out for bids from contractors. *Id.* at Rows 8, 11a, 12. One of these remaining projects, work at Racks 26 & 28, was the topic of significant discussion during the Court's review of the now-approved Second Amendment to the Consent Decree. Dkt. #260. The other two projects that the City is expected to finalize and seek bids for in the future are: (a) the enhanced high rate treatment unit that is required at the OCIT outfall (LTCP Update, Row 11a); and (b) the Northside Interceptor Tunnel (LTCP Update, Row 12). These are large, expensive projects that will have meaningful environmental benefits. However, they are also discrete projects. If the City falls behind, or chooses not to undertake work in a timely manner, their semi-annual reports and notices under Sections XII and XIII and Paragraph 83 of the Consent Decree will provide the United States and State ample notice of any anticipated delay in work or non-compliance with Consent Decree requirements.

**B.     A Court-appointed monitor is likely to cause delay**

As the Court knows, this case has a lengthy history. It would undoubtedly take a monitor time to become familiar with the case history and to understand what the City has already accomplished, and what is left to be accomplished, under the Consent Decree. Even if he or she is familiar with the case, the monitor may require reports and analysis in addition to that which is already required under the Decree and by the United States and State. Responding to such additional requirements would take time away from consent decree implementation and risk duplication or even conflict with the oversight work of the United States and State, causing delay.

**C.     A Court-appointed monitor would be costly**

Finally, the Court's Order does not set forth any information regarding either the amount of compensation or the expected source of any payments to the monitor. All entities in this matter are governmental entities that rely on public funds. Thus regardless of who ultimately pays for the monitor, an appointment would add an unnecessary financial burden to the public.

**D.     In lieu of a Court-appointed monitor, the parties propose to provide enhanced reporting**

Although the Consent Decree provides for regular reporting to the United States and the State, it does not provide for regular reporting directly to the Court about non-compliance. This approach is a common feature of such municipal sewer consent decrees, intended to ensure that only matters that the parties cannot resolve on their own are presented for judicial review. The general practice of limiting the submission of reports to the regulatory agencies is intended, among other things, to reduce the strain on judicial resources associated with oversight of long-term agreements. However, to the extent that the Court wishes to be directly advised about the status of the City's compliance with the remaining projects, the parties would agree, in lieu of a

9

Court-appointed monitor, to enhanced reporting. Specifically, within 90 days of submission of each semi-annual report, the City would prepare a report containing key information related to compliance with requirements for CSO and wastewater treatment plant improvements. *See* Attachment D to Consent Decree (setting forth requirements for semiannual reports).[2] The parties would file these reports with the Court, along with any notices pursuant to paragraph 83 and Sections XII and XIII, of anticipated violations of the Consent Decree. In this manner, the parties would voluntarily undertake additional reporting responsibilities that a Court-appointed monitor might otherwise exercise in the course of his or her appointment.

---

[2] The parties agree that the compliance information required in Attachment D, section 2 to the Consent Decree (which sets forth the required contents on the semiannual report for "CSO and WPCS Control Measures"), without the project cost information included in 2.C, is the appropriate "key information" that should be included in the quarterly reports. Dkt. #155, Consent Decree Attachment D at 2-3.

## **CONCLUSION**

For the above reasons, the United States shows cause why the Court should not appoint a monitor to oversee compliance with the Decree, and, instead, proposes enhanced reporting to improve transparency to the Court.[3]

Date: <u>January 10, 2020</u>　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　<u>s/ Bonnie A. Cosgrove</u>

　　　　　　　　　　　　　　　　　　　BONNIE A. COSGROVE
　　　　　　　　　　　　　　　　　　　Trial Attorney
　　　　　　　　　　　　　　　　　　　Environmental Enforcement Section
　　　　　　　　　　　　　　　　　　　Environment and Natural Resources Division
　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　301 Howard St., Suite 1050
　　　　　　　　　　　　　　　　　　　San Francisco, CA 94105
　　　　　　　　　　　　　　　　　　　Phone: (415) 744-0130
　　　　　　　　　　　　　　　　　　　Fax: (415) 744-6476
　　　　　　　　　　　　　　　　　　　Email: bonnie.cosgrove@usdoj.gov

---

[3] Should the Court decide to appoint a monitor, the United States requests the opportunity to review and have input into, and potentially object to, the choice of monitors, matters relating to the monitor's compensation (including source of remuneration), and the nature, scope and extent of the monitor's assigned responsibilities.

## CERTIFICATE OF SERVICE

       I hereby certify that on January 10, 2020, a copy of the United States' **Response to Court's Show Cause Order** was filed electronically. Notice of this filing will be sent to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Date: <u>January 10, 2010</u>                     Respectfully submitted,

                                          <u>s/ Bonnie A. Cosgrove</u>

                                            BONNIE A. COSGROVE
                                            Trial Attorney
                                            Environmental Enforcement Section
                                            Environment and Natural Resources Division
                                            United States Department of Justice
                                            301 Howard St., Suite 1050
                                            San Francisco, CA 94105
                                            Phone: (415) 744-0130
                                            Fax: (415) 744-6476
                                            Email: bonnie.cosgrove@usdoj.gov