UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.: 5:09CV272 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITY OF AKRON, et al. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

On December 17, 2019, the Court ordered the parties to show cause why it should not appoint a monitor to assist in oversight of compliance with the Consent Decree. Doc. 262. On January 10, 2020, the parties filed their respective responses. Doc. 263, 264, and 265.

The parties each argue that any additional oversight would be duplicative of the roles played by the U.S. EPA and the Ohio EPA. However, as the Court noted in its show cause order, Akron's delay in completion of the OCIT has to date, based on Akron's own modeling, resulted in a discharge of roughly 290 million gallons of combined sewage into surrounding waterways.[1] The massive project is nearly 13 months behind schedule, and "the United States has not yet exercised its enforcement authority[.]" Doc. 264 at 6 (U.S. EPA brief in response to show cause order). Instead,

---

[1] It appears from the record that neither EPA entity has taken any steps to determine the *actual* amount of pollution that has flowed into the surrounding waterways during Akron's delay in completing the OCIT.

1

"[t]he United States may seek enforcement for the OCIT delay once it has completed its review and analysis of Akron's additional information and, in consultation with the State, determines the most appropriate manner to do so while helping to ensure that the delay is minimized as much as possible." Doc. 264 at 6.

Stated differently, during the 13-month delay, neither EPA entity has taken any steps to determine whether the delay could have been reduced or whether construction could have been expedited (or *still* could be expedited). Instead, the regulatory agencies in charge of protecting Akron's waterways have taken a wait-and-see approach, allowing millions of gallons of pollution to flow into the Cuyahoga River and Cuyahoga Valley National Park.[2] Moreover, the agencies have time and again returned to the premise that the sole available remedy available are the stipulated penalties outlined in the Decree.

These facts form the basis of the Court's assertion that the EPA entities have, at least in part, abdicated their roles. The EPA entities are correct in one small sense – they are fulfilling one of their limited roles under the Decree. They continue to passively receive input from Akron while reserving all their rights under the Decree. However, entry of the Decree did not somehow lessen the roles of either EPA. Their mission remains to protect human health and the environment. Potentially handing Akron a bill for its stipulated penalties while simultaneously allowing more than 400 million gallons of combined sewage escape Akron's sewer system does not fulfill that mission. Moreover, the Decree did not, nor could it, lessen the regulatory enforcement powers of either EPA.

---

[2] This wait-and-see approach will undoubtedly result in even larger discharges in the near future as Ohio nears its rain-heavy Spring season.

2

However, while the parties suggest that the Court's role under the Decree is exceedingly limit, they fail to address the actual language of the Decree.

> The Court shall retain jurisdiction of this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering order[s] modifying this Decree, pursuant to Sections XIV (Dispute Resolution) and XXIV (Modifications), or effectuating or enforcing compliance with the terms of this Decree.

Doc. 155 at 56. (Consent Decree, Section XXIII). The parties' show cause responses strip this provision of any meaning. The parties effectively assert that the Court's involvement is limited to the other portions of Section XXIII – resolving disputes or approving modifications. As set forth above, the language of the Decree is not so limiting. Instead, the parties voluntary agreed to grant the Court continuing jurisdiction to enforce compliance with the terms of the Decree by all parties.

The larger question that remains unanswered is what enforcement mechanisms are available to the Court. It is clear from the Decree that decisions regarding the imposition of the stipulated penalties lie solely with the EPA entities. Moreover, the Court itself is not equipped to examine Akron's efforts, or lack thereof, to remedy its current noncompliance. However, that does not necessitate that the Court take no action. *See United States v. Bd. of Cty. Commissioners of Hamilton Cty., Ohio*, 937 F.3d 679, 691 (6th Cir. 2019)(nothing that this court possesses broad authority to enforce the terms of consent decrees).

On March 13, 2013, the Court appointed Professor Johnston to "review the totality of the record and opine on the timeliness and effectiveness of the proposed Consent Decree." Doc. 135 at 11. On June 20, 2019, the Court reappointed Professor Johnston to "to assist the Court in its review of the Proposed Second Amendment to the

3

Consent Decree as well as [to review] compliance to date under the existing terms of the Decree." Doc. 232 at 1. On both occasions, Professor Johnston offered his opinion to the Court in a timely and professional manner.

Based upon the above, coupled with the Court's show cause order, Professor Johnston will remain in place as appointed on June 20, 2019. He will not serve as a monitor, but he will continue in his previously ordered role and be permitted to analyze compliance with the Decree. The Court further notes that Professor Johnston is hereby authorized, if he deems it necessary, to utilize up to two other related professionals to assist in his review. However, none of these professionals will begin work without their credentials first being provided to all parties and all parties being permitted to raise objections on the record.

The Court also takes judicial notice of the fact that Akron has publicly announced that it has begun work on a submission that would ultimately be the Third Amendment to the Decree.[3] As such, Professor Johnston's continued involvement will only serve to expedite a review of any future proposed amendment. The parties' concerns over cost, therefore, should be put at ease as Professor Johnston's role will continue to benefit them through assisting the Court in making timely decisions.

The Court notes that at this time Professor Johnston will continue solely in the role as a Court-appointed expert. He will have no enforcement authority, nor will he be treated as a monitor at this time. The parties, however, shall fully comply with any requests for information made by Professor Johnston in fulfilling his expert role.

---

[3] See https://www.beaconjournal.com/news/20190802/akron-seeks-to-lower-sewer-project-costs.

4

Finally, the Court orders that Professor Johnston shall be compensated from the time of his reappointment, June 20, 2019, at the rate of $550 per hour.  The Court finds this to be an appropriate increase over his previous rate of $450 that was established in March of 2013, more than six years prior to his reappointment.

IT IS SO ORDERED

Date:  January 27, 2020                     /s/ John R. Adams
                                                       JUDGE JOHN R. ADAMS
                                                       UNITED STATES DISTRICT COURT