IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) **CASE NO. 5:09-cv-00272** |
| THE CITY OF AKRON, OHIO, | ) **JUDGE JOHN R. ADAMS** |
| and | ) |
| THE STATE OF OHIO, | ) |
| Defendants. | ) |

**PLAINTIFF UNITED STATES OF AMERICA'S BRIEF IN RESPONSE TO COURT'S APRIL 10, 2020 ORDER**

On April 10, 2020, the Court ordered the United States Environmental Protection Agency ("U.S. EPA") to file a brief no later than April 24, 2020 regarding "the impact, if any, of the 'COVID-19 Implications for EPA's Enforcement and Compliance Assurance Program' memorandum on the Decree." Dkt. No. 274. In short, the "COVID-19 Implications for EPA's Enforcement and Compliance Assurance Program" memorandum ("Temporary Policy") has no impact, substantive or procedural, on the Consent Decree.

The Temporary Policy, issued on March 26, 2020, addresses U.S. EPA enforcement of environmental legal obligations during the COVID-19 public health emergency, Dkt. No. 274-1, and discusses the appropriate use of enforcement discretion in a number of scenarios under which an entity's compliance with certain environmental requirements may be affected by the COVID-19 public health emergency. Section I.C of the Temporary Policy covers settled matters, including cases like this, that have been resolved through Consent Decrees. That section of the Temporary Policy provides that "[p]arties should utilize the notice procedures set forth in the consent decree, including notification of a force majeure, as applicable, with respect to any noncompliance alleged to be caused by COVID-19." *Id.* at I.C.1.

U.S. EPA has also posted on its website a number of "Frequently Asked Questions" regarding the Temporary Policy, one of which emphasizes that the Temporary Policy does not override force majeure provisions in settlement agreements, and that parties to Consent Decrees with the United States should follow those provisions when addressing any claim of an inability to comply based on the COVID-19 public health emergency. U.S. EPA, *Frequent Questions About the Temporary COVID-19 Enforcement Policy*, https://www.epa.gov/enforcement/frequent-questions-about-temporary-covid-19-enforcement-policy#10 (last visited April 23, 2020) ("The specific force majeure provisions and requirements in settlement agreements apply, and the Temporary COVID-19 Enforcement Policy does not replace or supersede those provisions.")

Here, the Consent Decree addresses force majeure events in two sections, one of which applies to claims to the federal government, Consent Decree at Section XII, and the other to the State of Ohio, *Id.* at Section XIII (Potential Force Majeure). As defined in the Consent Decree, "Force Majeure" is "any event arising from causes beyond the control of Akron [and its agents] that delays or prevents the performance of any obligation under [the] Consent Decree despite Akron's best efforts to fulfill the obligation." Consent Decree at ¶¶ 56 and 61. For a force majeure claim to be ripe for decision, the City of Akron ("Akron" or "City") must, in accordance with ¶¶ 57 and 62 of the Decree, provide the following: an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Akron's rationale for attributing such

delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in its opinion, such events may cause or contribute to the endangerment to public health, welfare, or the environment. *Id.* at ¶¶ 57 and 62.

As the Court knows, on March 24, 2020, the City wrote the United States and the State a letter regarding the potential for force majeure events ("March 24 Letter").[1] Dkt. No. 273. Consistent with the instant brief, our response letter instructed the City to follow the force majeure provisions in the Consent Decree. *See* Dkt. No. 277-1. *See also* Status Report of April 24, 2020, Dkt. No. 277.

Thus, the Temporary Policy does not change Akron's obligations under the Consent Decree, including its obligations to fully comply with the force majeure provisions of the Decree should it claim – as it has done generally in its March 24 Letter – that the COVID-19 public health emergency may affect its ability to timely adhere to specific compliance measures of the Decree.[2]

                                             Respectfully submitted,

Date: April 24, 2020                                    */s/ Bonnie A. Cosgrove*
                                                               BONNIE A. COSGROVE
                                                               Trial Attorney
                                                               Environmental Enforcement Section
                                                               Environment and Natural Resources Division
                                                               U.S. Department of Justice
                                                               301 Howard St., Ste. 1050
                                                               San Francisco, CA 94105
                                                               (415) 744-0130
                                                               (415) 744-6476 (fax)

---

[1] The March 24 Letter cited concerns about public health emergency related impacts on materials, equipment and labor. Dkt. No. 273.

[2] The Temporary Policy also explains that "EPA staff will coordinate with DOJ to exercise enforcement discretion with regard to stipulated penalties for the routine compliance obligations described in paragraph 1 and will also consult with any co-plaintiffs to seek agreement to this approach." Temporary Policy at I.C.2. These "routine compliance obligations" include monitoring and reporting. *Id.* at I.C.1. So, for example, if the City is unable to complete all elements of its next semiannual report due to COVID 19 impacts, the Temporary Policy recognizes that the government may exercise enforcement discretion to refrain from assessing stipulated penalties. This type of enforcement discretion is already addressed in the Consent Decree, which provides that the United States and State have authority to waive stipulated penalties, even in the absence of a force majeure. Consent Decree at ¶ 49.

                                                                            bonnie.cosgrove@usdoj.gov
                                                                            Attorney for the United States

## CERTIFICATE OF SERVICE

      I hereby certify that on April 24, 2020, a copy of the United States' **Brief in Response to April 10, 2020 Court Order** was filed electronically. Notice of this filing will be sent to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Date: April 24, 2020    Respectfully submitted,

                                          s/ Bonnie A. Cosgrove_____
                                          BONNIE A. COSGROVE
                                          Trial Attorney
                                          Environmental Enforcement Section
                                          Environment and Natural Resources Division
                                          United States Department of Justice
                                          301 Howard St., Suite 1050
                                          San Francisco, CA 94105
                                          Phone: (415) 744-0130
                                          Fax: (415) 744-6476
                                          Email: bonnie.cosgrove@usdoj.gov