UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.: 5:09CV272 |
| Plaintiff, | ) ) | JUDGE JOHN ADAMS |
| v. | ) ) | **ORDER** |
| CITY OF AKRON, et al. | ) ) ) ) ) | (Resolving Doc. 392) |
| Defendants. | ) | |

This matter appears before the Court on the City of Akron's motion to stay this Court's order denying Akron's motion to modify pending the completion of an appeal. Doc. 392. The Government has opposed the motion. Upon consideration, the motion is DENIED.

**I. Facts**

On March 1, 2024, this Court denied Akron's motion to modify the parties' Consent Decree. Specifically, Akron sought to eliminate the requirement that it construct an enhanced high-rate treatment facility ("EHRT"). In denying the motion, the Court found no merit in *any* of Akron's contentions that it believed supported modification. The Court concluded:

> Fortunately for the environment, the Decree cannot be revisited and modified simply because Akron would like to renegotiate the obligations that it freely assumed in 2011 when the Decree was entered. That day and through to the present day, those obligations are necessary to protect the sensitive areas that all of Akron's sewer outflows would impact if permitted. As detailed back in 2011, the acting branch chief in the municipal enforcement plan in the water enforcement division of the U.S. EPA, indicated: "I think the complication here is that *every outflow is to a*

1

> *sensitive area*." Doc. 87 at 150 (emphasis added). As the need to protect those areas has never changed, Akron's request to modify the Decree to allow them to be polluted is DENIED.

Doc. 390 ta 15-16.

On April 1, 2024, Akron appealed the Court's denial of the motion to modify. On that same day, Akron moved to stay implementation of the Court's order. On April 15, 2024, the Government opposed the motion to stay. The Court now reviews Akron's arguments.

**II. Legal Standard**

This Court may issue a stay pending appeal only after consideration of four factors: (1) whether the party seeking the stay has made a strong showing of likelihood of success on the merits on appeal; (2) whether the moving party will suffer irreparable harm if the stay does not issue; (3) whether issuance of a stay will substantially injure other parties to the proceeding; and (4) where the public interest lies. *Nken v. Holder*, 129 S.Ct. 1749, 1756 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors, likelihood of success on the merits of the appeal and irreparable injury to the appealing party, are the most critical. *See Nken*, 129 S.Ct. at 1761. This Court has further previously noted

> These factors are to be balanced. The strength of the likelihood of success on the merits that needs to be demonstrated is inversely proportional to the amount of irreparable harm that will be suffered if a stay does not issue. However, in order to justify a stay of the district court's ruling, the defendant must demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted.

2

*Howe v. City of Akron*, No. 5:06 CV 2779, 2014 WL 12637915, at *1.[1]

**III. Legal Analysis**

1. <u>Likelihood of success on the merits</u>

"[T]he Sixth Circuit [has] explained that 'a movant need not always establish a high probability of success on the merits.'" *American Standard, Inc. v. Meehan*, 614 F.Supp.2d 844, 847 (N.D.Ohio 2007) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). "When, for example, the irreparable injury factor greatly favors the movant, he may only be required to show a 'serious question going to the merits' in order to overcome the likelihood of success factor." *Id*. (quoting *Griepentrog*, 945 F.2d at 153-54).

With respect to presenting a serious question on the merits, Akron simply reiterates the arguments this Court rejected when it denied the motion to modify. For example, Akron contends that it provided enough information for the Court to evaluate the alleged price increase of the EHRT. However, even to date, Akron has *never* offered a detailed breakdown of the alleged cost increase. Moreover, Akron has not in any manner addressed the Court's analysis that noted that even if the Court accepted Akron's alleged cost increase, compliance would not be more onerous because the total cost of compliance would still be lower than original estimates due to the other amendments approved by the Court.

Similarly, Akron reiterates its stance that compliance with the CSO policy should be the ultimate goal of the Decree and that its alternative projects offered "superior"

---

[1] The Government has persuasively argued that the heightened standard for injunctive relief should govern this request for relief. However, as the motion fails under either standard, the Court need not resolve that argument.

benefits when compared to the EHRT.  Once again, Akron wholly ignores the Court's findings that it would have *no* enforcement mechanism over those alternative projects.  More importantly, Akron ignores that it cannot achieve compliance with the zero-overflow standard in its NPDES permit without construction of the EHRT.  As a result, it cannot demonstrate compliance with the CSO policy under its proposed modification.

In its reply, Akron contends that "there still remains a serious legal question on appeal about whether this Court erred by imposing this 'zero untreated CSO discharge' requirement upon Akron because there is no such requirement in the CSO Policy or in Akron's NPDES permit."  Doc. 399 at 8. However, the Court did not impose such a requirement.  Akron *voluntarily* agreed to such a requirement in the Consent Decree more than a decade before the pending motion to modify was denied.  As such, there is *no* legal question about the basis for the Court's discussion of zero overflows – the requirement was the lynchpin of the Consent Decree.

In short, Akron simply seeks to achieve through its motion to stay what it could not achieve through its motion to modify.  Namely, Akron seeks to delay its responsibilities under the Decree and thereby extend the time period in which it actively pollutes sensitive waters that flow into a national park.  As Akron has failed to demonstrate any serious question going to the merits, the first factor does not favor a stay.

2. <u>Irreparable Harm</u>

Akron contends that absent a stay it will be "need to move forward with this project and construct the EHRT."  In support, Akron also cited to *Michigan Coal. of*

4

*Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153–54 (6th Cir. 1991) which held:

> In evaluating the degree of injury, it is important to remember that the key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id.* (citations and quotations omitted). While citing to the above, Akron then proceeds to argue that its irreparable injury is that it "will incur the $209 million for the project." Doc. 392-1 at 11. In other words, Akron contends that its irreparable injury is entirely monetary. As injuries framed in monetary terms are by their nature *not* irreparable, this factor weighs against Akron.[2]

The Court also notes that even if it were to consider Akron's monetary injuries as irreparable, the record is insufficient to find this factor in favor of Akron. While Akron repeatedly relies upon the total cost of the EHRT, it has offered no information that would help explain *when* these costs will be incurred. While bidding for the EHRT is scheduled to be completed by April 30, 2024, full operation of the EHRT is not required until October 31, 2027. As such, it would be disingenuous to suggest that Akron will incur the full $209 million in costs during the pendency of an appeal.

---

[2] Akron's reply suggests that that "economic injuries caused by federal agency action" can constitute irreparable injury, relying on *Ohio v. Becerra*, 87 F.4th 759, 782-783 (6th Cir. 2023). However, *Becerra*'s holding was expressly predicated upon the inability to recover damages against a federal agency: "economic injuries caused by federal agency action are generally unrecoverable *because the APA does not waive sovereign immunity for damages claims*." (Emphasis added). Akron's ability to limit or recover expenditures is dependent on Akron's *own* contractual negotiations. As such, *Becerra* is inapplicable.

5

Similarly, while Akron contends that it will be obligated to enter into contracts and incur debt to construct the EHRT, it has not explained why it cannot contract in such a manner to mitigate its risks while an appeal is pending. Instead, Akron appears to suggest that once *any* part of the process of constructing the EHRT has started that Akron will have no avenue to stop the process. The Court does not find this to be factually or legally accurate. As such, this factor weighs against a stay.

Finally, the Court finds no merit in Akron's contention that it will have to *immediately* move forward with a 23% rate increase that will irreparably harm its ratepayers. First, it is questionable whether Akron can rely on alleged irreparable harm to a third party to meet its burden. However, assuming *arguendo* that Akron may so rely, the argument suffers from the same flaw. While Akron has alleged that it could immediately incur nearly 30% of the total cost of the project, it has provided no detailed basis to support this conclusory allegation. Further, it has not responded to the Government's assertions that this exposure could be limited through contractual negotiations.

3. <u>Harm to Others and Public Interest</u>

Finally, Akron contends that a stay will not harm others and would be in the public interest. The Court finds no merit in either contention.

First, Akron asserts that only 2 overflows have occurred at the OCIT in the last 755 days and therefore no harm will flow from delaying construction of the EHRT. However, Akron's own argument is self-defeating. As Akron concedes, overflows *have* occurred. The continued existence of these overflows will result in continued pollution of waters that flow into a national park. Delaying Akron's obligations under the Decree

6

serve to extend the permissible period of time under which pollution can effectively occur without penalty. As such, a stay would cause harm to others.

Similarly, the public interest lies with Akron remedying its pollution within the deadlines set forth by the Decree. It is hardly surprising that Akron has letters of support for a modification that it contends would save it and its ratepayers a substantial amount of money. The 280 letters in support, however, do not legally establish that Akron's position is in the public interest.[3] Moreover, Akron's alleged monetary savings must be weighed against Akron's legal obligation to comply with the Clean Water Act and the cost to the environment to continue to delay Akron's obligations under the Decree. In weighing those options, the harm to sensitive waters far outweighs Akron's desire to reduce its costs through materially altering a Consent Decree it has operated under for more than a decade.

### IV. Conclusion

Based upon the above, all four factors weigh against the granting of a stay. Accordingly, Akron's motion to stay is DENIED.[4]

IT IS SO ORDERED

April 23, 2024                         /s/ Judge John R. Adams
                                       JUDGE JOHN R. ADAMS
                                       UNITED STATES DISTRICT COURT

---

[3] The Court also questions the value of these letters when Akron actively solicited support for its position going as far as offering a template for support letters on its website.

[4] While it played no role in the Court's evaluation of Akron's motion to stay, the Court notes that as of the filing of this order, while Akron's contends its obligations are merely days away, it has not sought to expedite its appeal.

7