UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  5:09CV272 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CITY OF AKRON, et al., | ) | |
| | ) | (Resolving Doc. 401) |
| | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is Defendant City of Akron's motion for judicial review of a dispute between it and the federal Government plaintiff.  Doc. 401.  More specifically, those two parties disagree regarding whether certain of Akron's current requirements under the Consent Decree are stayed.  The motion for review is GRANTED, and the Court now resolves the parties' dispute.

"A consent decree has attributes of both a contract and of a judicial act." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). "Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). "[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id*. at 682. The consent decree is a judicial act because it "places the power and prestige of the court behind the compromise struck by the parties." *Williams*, 720 F.2d at 920. A court must "protect the integrity of the decree with its contempt powers." *Id*.  Because a consent decree is viewed as a

1

"contract," the Sixth Circuit mandates interpreting it using the state law from where it was entered. *See John B. v. Emkes*, 710 F.3d 394, 407 (6th Cir. 2013).

While the Court will interpret the Decree under Ohio law as required under existing precedent, the Court is also mindful of the persuasive concurring opinion from *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 237 (6th Cir. 2019). Within that concurrence, Judge Bush notes that:

> Therefore, it is the actual text of the consent decree, not what one party argues is its purpose after the fact, that governs. And that text, the Supreme Court has stated, is to be interpreted employing certain aids to construction used in contract law. Such aids include the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree. Also, any construction of the consent decree, including any proposed modification of the consent, must be supported by the text of the instrument.

*Id*. at 239 (6th Cir. 2019)(citations and quotations omitted).

Under Ohio law, when confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273. The Court must examine the contract as a whole and presume that the intent of the parties is reflected in the language used in the contract. *Kelly v. Med. Life Ins. Co*. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus. Moreover, this Court must look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the remaining portions of the contract. *Alexander v. Buckeye Pipe Line Co*. (1978), 53 Ohio St.2d 241, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id*.

The parties' dispute focuses upon one paragraph from the Decree, Paragraph 67, which provides:

> 67. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. If a dispute is subject to this Section, Akron's failure to seek resolution of such dispute under this Section shall preclude it from raising any such issue as a defense to any action by the United States or State to enforce any obligation under this Consent Decree. If the United States and the State provide Akron with materially different or irreconcilable positions on the issue(s) in dispute, Akron's obligations to perform an action necessarily affected by the materially different or irreconcilable positions (and Akron's liability for stipulated penalties concerning such obligation) shall be stayed until the dispute is resolved.

Doc. 155 at 42.  Additionally relevant to the Court's resolution of this issue are paragraphs 112 and 113 of the Decree which provide as follows:

> 112. The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.
>
> 113. Any disputes concerning modification of this Decree shall be resolved pursuant to Section XIV of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 73, the Party seeking modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

Doc. 155 at 55-56.

Relevant to the instant dispute, Akron and the Government disagree regarding whether Akron's obligations are and/or were stayed because the Government and the State of Ohio offered divergent views on whether Akron's proposed modification that would have eliminated its obligation to construct an enhanced high-rate treatment facility

3

("EHRTF") was appropriate under the Decree.[1] That underlying dispute was presented to the Court through Akron's motion to modify the Decree that was filed on September 15, 2023. The Court fully resolved that motion on March 1, 2024, finding that Akron had not established a basis to modify the Decree. That issue remains pending on appeal at the time of this order.

At the outset, the Court agrees with Akron that Paragraph 113 makes *all* disputes concerning modification subject to the dispute resolution process. However, the Court cannot agree with Akron's subsequent belief that therefore *all* disputes in which Akron receives conflicting positions result in a stay of Akron's obligations. Akron's interpretation is in conflict with both the plain language of the Decree and the intent of the Decree espoused in its remaining provisions.

The parties agreed in the Decree that no material modification could occur with Court approval. The parties further agree that Akron's requested modification to its EHRTF obligations was a material modification. As such, there is no dispute that Akron's proposed modification could not become effective without Court approval. Coupling this fact with the plain language of Paragraph 67 compels the conclusion that no stay is in effect. Paragraph 67 *only* provides for a stay of "Akron's obligations to perform an action necessarily affected" by the irreconcilable conditions. Akron concedes, as it must, that none of the parties could affect Akron's obligations with respect to the EHRTF. Rather, the authority to alter those obligations rests solely and exclusively with the Court. As such, Akron's obligations with respect to the EHRTF were *not*

---

[1] The parties do not dispute that on June 23, 2023, the Government and the State of Ohio gave materially different and irreconcilable positions to Akron. Ohio supported Akron's effort to modify its obligation, while the Government did not believe a modification was appropriate.

4

"necessarily affected" by the receipt of competing positions from the Government and the State of Ohio. Accordingly, no stay was in place.

This interpretation also fulfills the intent of the Decree. The undersigned has presided over this litigation and the subsequent Decree since its inception on February 5, 2009. A focal point of the parties' negotiation and the Court's ultimate approval of the Decree was the timeline in which projects would be completed. In fact, the Court initially rejected the parties' proposed Decree because an updated long-term control plan ("LTCP") had not been completed which detailed project completion dates. It was only upon the submission of the updated LTCP that the Decree received judicial approval. Despite the fact that these deadlines were a primary factor in the parties' negotiation and the subsequent Court approval, Akron now takes the position that a disagreement between the parties over a modification can dramatically extend Akron's deadlines. If the Court were to accept Akron's interpretation, its obligations with respect to the EHRTF would have been extended roughly 18 months and counting. Such an extensive stay would lengthen the Decree by more than 10% -- a result that runs contrary to all other aspects of the Decree.[2] At its simplest, the stay proposed by Akron would delay its full compliance with its NPDES permit – a central component of the Decree.[3] As such, a stay runs counter to the intent of the Decree to obtain Akron's *timely* compliance with its environmental obligations.

---

[2] Notably, Akron contends that the stay remains in place while the matter remains pending before the Sixth Circuit. Presumably, Akron would also argue that a stay would remain if it then sought certiorari from the Supreme Court. As such, Akron could extend such a stay for months and months *longer u*nder its proposed interpretation.

[3] As Judge Bush noted, one aid to be used in interpreting the Decree includes the circumstances surrounding the formation of the consent order. The docket herein reflects than updated LTCP with specific project deadlines that would result in full compliance by October of 2028 was the **linchpin** in obtaining Court approval. An interpretation that allows for such a date to be *significantly* altered without Court involvement is untenable.

Akron's interpretation would also lead to what can only be labeled an absurd result. If the State of Ohio and the Government had *agreed* that Akron's request to modify its EHRTF obligation was appropriate, there would have been no stay of Akron's obligations. Rather, any change of Akron's obligations could only be achieved through judicial approval. Despite that undeniable fact, Akron takes the position that it is *better off* under the Decree if the State of Ohio and the Government disagree over a modification because a stay can then be achieved without judicial intervention. For all the reasons detailed above, the Court cannot agree with such an interpretation.

The Court also rejects Akron's contention that if the parties desired, they could have carved material modifications out from the stay provision of the Decree. As set forth above, by choosing to only stay those obligations "necessarily affected" by the *parties'* positions, the parties effectively *did* carve out material modifications from the stay provision. Similarly, were the Court to reach an alternative conclusion, it would effectively render the terms "necessarily affected" meaningless. Akron appears to argue that those terms solely mean "any obligations that involve the receipt of materially conflicting positions." However, if the parties intended for a stay to be put in place under *all* those circumstances, there choice to include "necessarily affected" would have been entirely superfluous. As the Court must give meaning to all the terms of the Decree, it cannot accept Akron's interpretation.

Finally, contrary to Akron's contention, the Court's interpretation does not negate the language within the Decree. While the stay provision does not apply to *every* dispute between the parties, there are undeniably circumstances under which the stay provision would be implicated. There are any number of provisions with the Decree that could be

6

modify in immaterial ways. Under those circumstances, Akron's receipt of irreconcilable positions from Ohio and the Government *would* "necessarily affect" Akron's obligations. As such, a stay would result from those circumstances.

Akron's motion for judicial review is GRANTED, and the parties' competing positions are resolved as detailed in this order.

IT IS SO ORDERED.


<u>December 2, 2024</u>                    <u>    /s/ *Judge John R. Adams*    </u>
                                            JUDGE JOHN R. ADAMS
                                            UNITED STATES DISTRICT COURT